IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Stephen C. SOLOMON, Attorney at Law.

Supreme Court

*No.  95–3598–D.  Filed December 27, 1996.*

(Also reported in 556 N.W.2d 752.)

PER CURIAM. We review the recommendation of the referee that the license of Stephen C. Solomon to practice law in Wisconsin be revoked as discipline for professional misconduct. That misconduct consisted of his failure to provide clients competent representation in their legal matters, failure to give clients reasonable notice that he would not be in a position to complete their representation and refund unearned portions of advance fees he had been paid for it, initiation of personal contact with prospective clients detained in jail in order to obtain professional employment, failure to keep clients reasonably informed of the status of their matters and provide them sufficient information to permit them to make informed decisions regarding that representation, misrepresentation to a client that he would represent him on a claim, having no intention of completing that representation, charging an unreasonable fee for his services in a client's matter, and failure to hold advance fees obtained from or on behalf of clients separate from his own property.

We determine that the nature and extent of his professional misconduct established in this proceeding, when considered with the fact that he has been disciplined three times previously, in part for similar misconduct, warrant the revocation of Attorney Solomon's license to practice law. Attorney Solomon has demonstrated repeatedly his unwillingness to conform his professional conduct to the standards imposed on persons licensed by this court to practice law and again has shown his willingness to place his own pecuniary

interests above the legal interests of his clients, interests he has undertaken to protect.

Attorney Solomon was admitted to practice law in Wisconsin in 1974. He currently resides in Minnesota and is not practicing law. He has been disciplined three times previously: in 1984, he was privately reprimanded for neglecting a client's legal matter and for improperly withdrawing from the representation of a client; in February, 1985, the court publicly reprimanded him for entering into an agreement for an illegal fee in a worker's compensation matter and for making misrepresentation to a judge in a garnishment action against a former client, *In re Disciplinary Proceedings Against Solomon*, 122 Wis. 2d 315, 362 N.W.2d 156; in October, 1985, the Board of Attorneys Professional Responsibility (Board) privately reprimanded him for collecting an illegal fee and for writing a personally abusive letter to an attorney who had filed a grievance against him with the Board. In this proceeding, the referee, Attorney Marjorie Schuett, made findings of fact based on the parties' stipulation.

Two of the five matters in which Attorney Solomon engaged in professional misconduct occurred from July to December, 1993 and concerned his soliciting representation of jail inmates without having been contacted by them or anyone on their behalf and by gaining access to them in the jail by misrepresenting on the inmate visiting cards that his relationship to them was "attorney." Attorney Solomon telephoned the mother of one of the inmates that he required $2000 in fees to represent her son, which she would have to wire to his bank before he would meet again with the client and begin work on the case. Attorney Solomon then opened a personal checking account in the bank he had

specified and, after the requested fee was wired, wrote a $200 check on it.

Attorney Solomon appeared at the client's preliminary hearing but did not order a transcript of it and filed no discovery motions. At a subsequent pretrial conference, when the court told him his suppression motion was insufficient, Attorney Solomon asked the court for the name of the leading case governing searches and seizures. In August, 1993, he wrote the client that he was unable to complete the representation because he was about to accept a job in a different field, offered to sign a form for substitution of a new attorney, and said he would refund $500 of the fee he had received and turn over the file to new counsel. He neither refunded any money to the client nor turned over the client's file to the successor attorney.

In the second inmate case, Attorney Solomon appeared on a motion seeking bail reduction and advised his client to testify about the factual circumstances underlying the criminal charges in order to obtain a reduction. The court admonished him and the client that the client would be ill-advised to waive his Fifth Amendment privilege in order to seek bail reduction.

Another matter in which Attorney Solomon engaged in professional misconduct concerned his representation of a criminal defendant for whom he agreed to be substituted as counsel in February, 1994, knowing the case was scheduled for trial in about one week. At the hearing on his motion for a continuance held February 21, 1994, Attorney Solomon told the court he would be ready to try the case in a week to 10 days, and his motion was granted. However, on March 2, 1994, he filed a motion to withdraw as counsel. At the hearing on that motion, he acknowledged that he was unpre-

pared to proceed to trial and stated that he had accepted the appointment with the understanding that the matter would be resolved by plea rather than by trial.

On the day following that hearing, Attorney Solomon notified the court of his refusal to continue representation of the client, stating among other things that he was incompetent, unable and unwilling to continue to represent the client, had not completed the necessary interviews and investigation of the client's alibi defense, had not completed necessary legal research on evidentiary questions, and had not reviewed extradition papers. He also told the court that he would not be ready to proceed to trial as scheduled because of new developments in the case, he was in the process of changing careers, and he could not handle the case.

The referee concluded that Attorney Solomon failed to provide these clients competent representation, in violation of SCR 20:1.1.[1] He also violated SCR 20:1.15(a)[2] by failing to hold in trust, separate from his

---

[1] SCR 20:1.1 provides:

**Competence**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[2] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin,

own property, a retainer he received in connection with client representation. His failure to give clients reasonable notice that he would not complete their representation he had undertaken, his failure to refund the unearned portion of advance fees he had been paid, and his failure to contact a client's successor counsel and turn over the client's file violated SCR 20:1.16(d).[3] His initiation of personal contact with prospective clients by gaining access to them in the jail and suggesting he could defend them on criminal charges on which they were being held violated SCR 20:7.3(c).[4]

which account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

[3] SCR 20:1.16 provides, in pertinent part:

**Declining or terminating representation**

. . .

(d)   Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[4] SCR 20:7.3 provides, in pertinent part:

**Direct contact with prospective clients**

. . .

(c)   A lawyer shall not initiate personal contact, including telephone contact, with a prospective client for the purpose of obtaining professional employment except in the following circumstances and subject to the requirements of Rule 7.1 and paragraph (d):

(1)   If the prospective client is a close friend, relative or former client, or one whom the lawyer reasonably believes to be a client.

(2)   Under the auspices of a public or charitable legal services organization.

A fourth matter considered in this proceeding concerned Attorney Solomon's representation of a client in June, 1994, in a visitation dispute with the mother of the client's child and on a potential defamation claim. Attorney Solomon entered into a fee agreement with the client by which he agreed to represent him in the visitation dispute for $500 and in the defamation matter on a contingent fee basis, provided he would be given a $1000 advance as a retainer. The client's mother gave Attorney Solomon a $1000 check as a retainer in the defamation matter, which Attorney Solomon promptly cashed.

Attorney Solomon made a $50,000 demand on the potential defendants in the defamation matter but never responded to their attorney's rejection of that offer. Attorney Solomon did not appear at the hearing in the visitation dispute, even though he had received prior notice of it. Toward the end of July, 1994, Attorney Solomon wrote the client that he would be unable to complete his representation in those matters and said he would return one-half of the retainer he had received. He never returned any portion of that retainer.

In the last matter, Attorney Solomon was retained in July, 1994 to represent a client on traffic charges, entering into a fee agreement for $1000 for legal services and an additional $500 if the matter were tried. The client gave Attorney Solomon a $1000 check, which he promptly cashed. On July 15, 1994, Attorney Solomon entered not guilty pleas by mail and asked that

---

(3) Under the auspices of a bona fide political, social, civic, fraternal, employee or trade organization whose purposes include but are not limited to providing or recommending legal services, if the legal services are related to the principal purposes of the organization.

the matters be set for trial. By letter of July 25, 1994, he informed his client that he could not complete the representation in the traffic matters and said he would return one-half of the retainer. Attorney Solomon returned none of the retainer.

The referee concluded that Attorney Solomon's failure to appear for the visitation hearing in a client's matter violated SCR 20:1.3,[5] his failure to keep that client reasonably informed of the status of the matter and provide the client sufficient information to permit him to make an informed decision regarding representation in it violated SCR 20:1.4(a) and (b),[6] and telling the client he had a viable defamation claim, accepting a retainer to represent him in it, knowing he had no intention of completing that representation but would leave the practice of law prior to its completion, failing to perform any significant work in the matter, and abandoning the client without refunding any of the unearned retainer he had received violated SCR 20:8.4(c).[7] The referee also concluded that Attorney

[5] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[6] SCR 20:1.4 provides:

**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[7] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:
. . .

Solomon charged the client an unreasonable fee by accepting a $1000 retainer and providing no services other than writing a letter to the court advising it of the client's not guilty pleas.

We adopt the referee's findings of fact and conclusions of law concerning Attorney Solomon's professional misconduct in these matters. In addition to the license revocation as discipline for it, the referee recommended that Attorney Solomon be required to make restitution to those from whom he accepted advance payment of fees but did not complete the representation undertaken in the amount of 75 percent of the advance fees, which the Board had suggested. We accept the referee's recommendation for license revocation and restitution.

It Is Ordered that the license of Stephen C. Solomon to practice law in Wisconsin is revoked as discipline for professional misconduct, effective January 27, 1997.

It Is Further Ordered that within 60 days of the date of this order Stephen C. Solomon make restitution as specified in the report of the referee on file in this proceeding.

It Is Further Ordered that within 60 days of the date of this order Stephen C. Solomon pay to the Board of Attorneys Professional Responsibility the costs of this proceeding.

It Is Further Ordered that Stephen C. Solomon comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

(c)  engage in conduct involving dishonesty, fraud, deceit or misrepresentation.